STEVEN N. BERGER, SBA #009613
SCOTT B. COHEN, SBA #014377
PATRICK A. CLISHAM, SBA #023154
**ENGELMAN BERGER, P.C.**
3636 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012

Ph: (602) 271-9090
Fax: (602) 222-4999
Email: snb@engelmanberger.com
Email: sbc@engelmanberger.com
Email: pac@engelmanberger.com

Attorneys for the Debtors and
Debtors-in-Possession

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| RED MOUNTAIN MACHINERY COMPANY, | Case No. 2:09-bk-19166-RJH |
| RED MOUNTAIN HOLDINGS, LLC, | Case No. 2:09-bk-19170-RJH |
| RED MOUNTAIN PACIFIC LLC, | Case No. 2:09-bk-19175-RTB |
| BTH, LLC, | Case No. 2:09-bk-19178-RJH |
| Debtors. | (Jointly Administered Under Case No. 2:09-bk-19166-RJH) |
| | **MOTION FOR APPROVAL OF DEBTOR-IN-POSSESSION FINANCING TO FUND CERTAIN ADMINISTRATIVE FEES AND EXPENSES** |

Red Mountain Machinery Company and the jointly administered debtors, as debtors and debtors-in-possession herein (collectively, the "Debtors") hereby move pursuant to 11 U.S.C. § 364(b) and Bankruptcy Rule 4001(c), for the entry of an order authorizing Debtor to obtain a loan in the amount of up to $200,000 (the "DIP Loan") from their principals Linda and Owen Cowing (the "Cowings") upon the terms and conditions set forth herein. This Motion is supported by the

{02471.002/00142067.DOC}

Declaration of Dave Gonzales filed concurrently herewith ("Gonzales Dec."), the entire record before this Court in this case, and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THE DIP LOAN AND ITS PROPOSED TERMS.

By this Motion, the Debtors seek authority to enter into a DIP financing arrangement with the Cowings in order to fund the Debtors' payment of professional fees and expenses incurred by their bankruptcy counsel, Engelman Berger, PC ("EB") and, to the extent necessary, fund Debtors' short term cash flow and working capital needs that the Debtors anticipate may be required as a result of their recent and anticipated sales successes.

### TERMS OF DIP LOAN

- **Maximum Loan Amount**: The Cowings will loan Debtor up to $200,000 (the "DIP Loan"). Subject to further Court order, the maximum DIP Loan amount may be increased.

- **Use of DIP Loan Funds**: The DIP Loan will be advanced by the Cowings as needed to fund short term cash needs of the Debtors' rental business and payment of EB's fees and expenses (subject to Court approval).[1]

- **Interest Rate**: The DIP Loan will be interest free to and through the Maturity Date.

- **Maturity**: The DIP Loan will mature on the earlier of confirmation of the Debtors' Joint Chapter 11 Plan of Reorganization or 12 months from the initial advance (the "Maturity Date"), with the full principal balance due and payable at that time.

- **Unsecured Loan - Administrative Priority**: The DIP Loan will be an unsecured loan and will be treated as an allowed administrative expense priority claim pursuant to 11 U.S.C. § 364(b) and 503(b)(1). The application does not seek any liens, other security, or priming status in connection with the DIP Loan.

### II. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Parties and Jurisdiction

1. On August 11, 2009 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code. The Debtors are continuing to operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and

---

[1] On November 13, 2009, the Court entered a *Knudsen* order (the "Interim Fee Order") establishing procedures for the payment of professional fees in these Cases on an interim basis. Dkt. 181.

1108.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (D).

3. The Court is authorized to grant the relief requested in this Motion pursuant to 11 U.S.C. § 363(b) and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure.

**B.  The Loan From Comerica**

4. On June 23, 2003, the Debtors obtained a loan in the form of a revolving line of credit (the "Loan") from Comerica Bank, N.A ("Comerica"), pursuant to the terms of the Note and a credit agreement (the "Loan Agreement") executed contemporaneously therewith. The Loan Agreement and Note have since been amended several times and currently evidence an obligation of the Debtors to Comerica in the maximum principal amount of $33,000,000.

5. The Note is secured by, among other things, the Security Agreement, pursuant to which the Debtors granted Comerica a security interest in substantially all of its assets (the "Collateral"). Comerica claims that all proceeds generated from the Debtors' use, sale or lease of the Collateral constitute Comerica's cash collateral (the "Cash Collateral").

6. The current principal balance of the obligation to Comerica under the Note is approximately $24,344,000. The present liquidation value of the Collateral is substantially less than the amount of the indebtedness secured by the Security Agreement.

**C.  Status of Chapter 11 Cases**

7. Since the Petition Date, the Debtors have been operating their business with the use of Comerica's Cash Collateral and pursuant to Court orders dated September 3, 2009, November 16, 2009, and January 13, 2019. Dkt. Nos. 73, 183, and 212 (the Cash Collateral Orders"). The Cash Collateral Orders provide that Comerica is granted a replacement lien on all Cash Collateral including, but not limited to cash, accounts receivables, and contracts, on a first priority basis.

8. On December 9, 2009, the Debtors filed their Debtors' Joint Chapter 11 Plan of Reorganization (the "Plan") and a proposed Disclosure Statement. Dkts. 189 and 190.

9. A hearing to approve the Debtors' proposed Disclosure Statement is now set

3

for February 18, 2010 at 11:00 a.m.

**D.     Funding of EB Fees and Expenses**

10.     Prior to the Debtors' bankruptcies, the Cowings funded retainers for the Debtor's lead bankruptcy counsel, Engelman Berger, PC ("EB") in the total amount of $165,307.50 (the "Retainer").

11.     Since that time, the Debtors have exhausted the Retainer and have incurred additional legal fees and expenses with EB in excess of $120,000.

12.     In order to continue their Cases through confirmation, the Debtors must be able to fund payment of EB's fees and expenses.

**E.     The Debtors' Short-Term Cash Needs**

13.     Prior to the Petition Date, the Debtors had undergone a substantial wind-down of their machine rental business. Since that time, however, the Debtors have successfully re-engaged their rental business and have experienced a steady increase in both the number of machines on rent and revenues resulting therefrom.

14.     To date, the Debtors have generated sufficient cash to pay their ongoing operating costs while creating additional new accounts receivable as security for Comerica. However, the Debtors anticipate that the upcoming spring market is going to bring a substantial increase in the demand for their machines and a resulting spike in sales. Such an increase will necessarily require the Debtors to incur increased up front cash expenses related to maintenance, repair and transportation costs with respect to the rental of each new additional machine.

15.     While such expenses will ultimately be covered from revenue on the new rentals, due to the 90+ day collections cycle that is inherent in the construction industry, the Debtors apprehend that cash expenses resulting from increased sales may exceed short term cash receipts and create a temporary liquidity issue for the Debtors.

16.     Accordingly, the Debtors require approval of the DIP Loan in order to meet any cash needs that may arise from the anticipated spike in spring sales.

4

## III. REQUEST FOR APPROVAL OF DIP LOAN

17. The terms of the DIP Loan are as follows:

   A. The DIP Loan will be used as needed to fund payment of the Debtors' ordinary business expenses (in the event that sufficient Cash Collateral is not available) and to pay EB's Court approved fees and expenses.

   B. The DIP Loan will be interest free to and through the Maturity Date.

   C. The DIP Loan will mature on the earlier of confirmation of their Plan or 12 months from the initial advance (the "Maturity Date"), with the full principal balance due and payable at that time.

   D. The DIP Loan will be an unsecured loan but be treated as an allowed administrative expense claim 11 U.S.C. § 364(b) and 503(b)(1).

18. The Debtors, in the exercise of their considered business judgment, believe that the DIP Loan represents the best terms reasonably available to Debtors for financing in an amount sufficient to fund current and near-term cash needs resulting from improved business operations and payment of EB's Court approved fees and expenses through confirmation of the Plan.

19. Therefore, approval of the DIP Loan is critical to the success of the Debtors' reorganization.

## IV. BASIS FOR RELIEF

Section 364(b) of the Bankruptcy Code provides that the Court, after notice and a hearing, may authorize a debtor-in-possession to obtain unsecured credit or to incur unsecured debt outside of the ordinary course of business, allowable under 11 U.S.C. § 503 (b)(1) as an administrative expense. 11 U.S.C. § 364(b).

Thus, to obtain unsecured, non-superpriority credit, the Debtors need only demonstrate that the creditor would be entitled to an administrative priority under Bankruptcy Code §503(b)(1). *In re Club Dev. & Mgmt. Corp.*, 27 B.R. 610, 611 (9th Cir. BAP 1982) ("The standards for authorizing a trustee to incur debt under section 364(b) so that it is allowable as an expense of administration under § 503(b)(1) are found in the latter section."). To qualify as an administrative expense under § 503(b)(1), "the claim must have arisen from a transaction with the debtor-in-possession, and directly and substantially benefitted the estate." *In re Ybarra*, 424 F.3d 1018, 1025 (9th Cir. 2005). The DIP

Loan satisfies both of these elements, as it is clearly a post-petition loan to Debtors acting as debtors-in-possession, and as set forth above, will provide a direct and substantial benefit to the estate.

The Debtors believe in their considered business judgment that alternative financing is not available on better terms. Indeed, the Debtors submit that no other persons would provide credit to the Debtors in an amount equivalent to the DIP Loan, without interest, and without receiving a priming lien or a superpriority administrative claim with priority over Comerica's security interests pursuant to §§ 364(c) or (d) in exchange. Moreover, the Debtors anticipate that, in lieu of repayment of the DIP Loan at Plan confirmation, the Cowings will contribute their administrative claim as part of their new value contribution under the Debtors' Plan. Finally, because the terms of the DIP Loan do not require repayment prior to the anticipated confirmation of the Plan or the priming or subordination of Comerica's lien, the DIP Loan will not burden the Debtors' estates or prejudice Comerica or any other party in interest. Accordingly, the Court should approve the DIP Loan pursuant to 11 U.S.C. § 364(b).

## V. CONCLUSION

WHEREFORE, the Debtors respectfully request the entry of an order: (1) approving the DIP Loan pursuant to 11 U.S.C. § 364(b) upon the terms and conditions set forth herein; (2) granting the Cowings administrative expense claim in an amount equal to the indebtedness incurred by the Debtors under the DIP Loan; and (3) granting such other and further relief as the Court deems just and appropriate.

**DATED** this 8th day of February, 2010.

        **ENGELMAN BERGER, P.C.**

        By */s/009613*
           Steven N. Berger
           Scott B. Cohen
           Patrick A. Clisham
           3636 North Central Avenue, Suite 700
           Phoenix, Arizona 85012
           Attorneys for the Debtors

///

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

COPY of the foregoing served as indicated on the service list below and by U.S. Mail on the Debtors' 20 largest creditors as filed with the Court on this 8th day of February, 2010:

U.S. Trustee's Office
230 N. First Avenue, Suite 204
Phoenix, Arizona 85003
**Via Fax: (602) 514-7270**

Comerica
R. Michael Farquhar
Lloyd Lim
Winstead PC
5400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
**Via Email: mfarquhar@winstead.com**
**Via Email: llim@winstead.com**

Comerica
Jordan Kroop
Thomas Salerno
Squires Sanders & Dempsey
47 N. Central Ave.
Suite 2700
Phoenix, AZ 85004-4498
**Via Email: tsalerno@ssd.com**
**Via Email: jkroop@ssd.com**

Barbara C. Klabacha
Jaburg Wilk
3200 N. Central Ave.
Suite 2000
Phoenix, AZ 85012
**Via Email: bck@jaburgwilk.com**

David L. Knapper
Law Offices of David L. Knapper
1599 E Orangewood Avenue, #125
Phoenix, AZ 85020-5159
**Via Email: david.knapper@azbar.org**

German Yusufov
Pima County Attorney's Office
32 N Stone Avenue
Tucson, AZ 85701
**Via Email: pcaocvbk@pcao.pima.gov**


By   */s/ Cynthia L. Worne*
       Engelman Berger, P.C.