STEVEN N. BERGER, SBA #009613
SCOTT B. COHEN, SBA #014377
PATRICK A. CLISHAM, SBA #023154
**ENGELMAN BERGER, P.C.**
3636 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012

Ph: (602) 271-9090
Fax: (602) 222-4999
Email: snb@engelmanberger.com
Email: sbc@engelmanberger.com
Email: pac@engelmanberger.com

Attorneys for the Debtors and
Debtors-in-Possession

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| RED MOUNTAIN MACHINERY COMPANY, | Case No. 2:09-bk-19166-RJH |
| RED MOUNTAIN HOLDINGS, LLC, | Case No. 2:09-bk-19170-RJH |
| RED MOUNTAIN PACIFIC LLC, | Case No. 2:09-bk-19175-RTB |
| BTH, LLC, | Case No. 2:09-bk-19178-RJH |
| Debtors. | (Jointly Administered Under Case No. 2:09-bk-19166-RJH) |
| | **DECLARATION OF DAVE GONZALES IN SUPPORT OF MOTION FOR APPROVAL OF DEBTOR-IN-POSSESSION FINANCING TO FUND CERTAIN PROFESSIONAL FEES AND EXPENSES** |

I, Dave Gonzales, hereby declare under penalty of perjury that the following statements are true and correct to the best of my information, knowledge and belief:[1]

1.  I am the Chief Restructuring Officer ("CRO") of Red Mountain Machinery Company

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the "Debtors' Motion for Approval of Debtor-In-Possession Financing to Fund Certain Professional Fees and Expenses" (the "DIP Financing Motion").

{02471.002/00143164.DOC /}

and the jointly administered debtors, as debtors and debtors-in-possession (collectively, the "Debtors") and as such I have the authority to make this declaration on behalf of the Debtors.

2. On August 11, 2009 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code. The Debtors are continuing to operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On June 23, 2003, the Debtors obtained a loan in the form of a revolving line of credit (the "Loan") from Comerica Bank, N.A ("Comerica"), pursuant to the terms of the Note and a credit agreement (the "Loan Agreement") executed contemporaneously therewith. The Loan Agreement and Note have since been amended several times and currently evidence an obligation of the Debtors to Comerica in the maximum principal amount of $33,000,000.

4. The Note is secured by, among other things, the Security Agreement, pursuant to which the Debtors granted Comerica a security interest in substantially all of its assets (the "Collateral"). Comerica claims that all proceeds generated from the Debtors' use, sale or lease of the Collateral constitute Comerica's cash collateral (the "Cash Collateral").

5. The current principal balance of the obligation to Comerica under the Note is approximately $24,344,000. The present liquidation value of the Collateral is substantially less than the amount of the indebtedness secured by the Security Agreement.

6. Since the Petition Date, the Debtors have been operating their business with the use of Comerica's Cash Collateral and pursuant to Court orders dated September 3, 2009, November 16, 2009, and January 13, 2019. Dkt. Nos. 73, 183, and 212 (the Cash Collateral Orders"). The Cash Collateral Orders provide that Comerica is granted to a replacement lien on all of on all Cash Collateral including, but not limited to cash, accounts receivables, and contracts, on a first priority basis.

7. On December 9, 2009, the Debtors filed their Debtors' Joint Chapter 11 Plan of Reorganization (the "Plan") and a proposed Disclosure Statement on December 9, 2009. Dkts. 189 and 190.

8. A hearing to approve the Debtors' proposed Disclosure Statement is now set for

February 18, 2010 at 11:00 a.m.

9. Prior to the Debtors' bankruptcies, the Cowings funded retainers for the Debtor's lead bankruptcy counsel, Engelman Berger, PC ("EB") in the total amount of $165,307.50 (the "Retainer").

10. Since that time, the Debtors have exhausted the Retainer and have incurred additional legal fees and expenses with EB in excess of $120,000.

11. In order to continue their Cases through confirmation, the Debtors must be able to fund payment of EB's fees and expenses.

12. Prior to the Petition Date, the Debtors' had undergone a substantial wind-down of their machine rental business. Since that time, however, the Debtors have successfully re-engaged their rental business and have experienced a steady increase in both the number of machines on rent and revenues resulting therefrom.

13. To date, the Debtors have generated sufficient cash to pay their ongoing operating costs while creating additional new accounts receivable as security for Comerica. However, the Debtors anticipate that the upcoming spring market is going to bring a substantial increase in the demand for their machines and a resulting spike in sales. Such an increase will necessarily require the Debtors to incur substantial up front cash expenses related to maintenance, repair and transportation costs with respect to the rental of each new additional machine.

14. While such costs will ultimately be recovered from their customers, due to the 90+ day collections cycle that is inherent in the construction industry, the Debtors apprehend that cash expenses resulting from increased sales may exceed short term cash receipts and create temporary liquidity issue for the Debtors.

15. Accordingly, the Debtors require approval of the DIP Loan in order to meet any cash needs that may arise from the anticipated spike in spring sales.

16. The terms of the DIP Loan are as follows:
- The DIP Loan will be used as needed to fund payment of the Debtors' ordinary business expenses (in the event that sufficient Cash Collateral is not available) and to pay EB's Court approved fees and expenses.

{02471.002/00143164.DOC /}

3

- The DIP Loan will be interest free to and through the Maturity Date.

- The DIP Loan will mature on the earlier of confirmation of their Plan or 12 months from the initial advance (the "Maturity Date"), with the full principal balance due and payable at that time.

- The DIP Loan will be an unsecured loan but be treated as an allowed administrative expense claim 11 U.S.C. § 364(b) and 503(b)(1).

17. The Debtors, in the exercise of their considered business judgment, believe that the DIP Loan represents the best terms reasonably available to Debtors for financing in an amount sufficient to fund current and near-term cash needs resulting from improved business operations and payment of EB's Court approved fees and expenses through confirmation of the Plan.

18. Therefore, approval of the DIP Loan is critical to the success of the Debtors' reorganization.

**DATED** this 8th day of February, 2010.

          /s/ Dave Gonzales
          Dave Gonzales
          Chief Restructuring Officer
          Red Mountain Machinery Company

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

COPY of the foregoing served as indicated
on the service list below and by U.S. Mail
on the Debtors' 20 largest creditors as filed
with the Court on this 8th day of February, 2010:

U.S. Trustee's Office
230 N. First Avenue, Suite 204
Phoenix, Arizona 85003
**Via Fax: (602) 514-7270**

Comerica
R. Michael Farquhar
Lloyd Lim
Winstead PC
5400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
**Via Email: mfarquhar@winstead.com**
**Via Email: llim@winstead.com**

Comerica
Jordan Kroop
Thomas Salerno
Squires Sanders & Dempsey
47 N. Central Ave.
Suite 2700
Phoenix, AZ 85004-4498
**Via Email: tsalerno@ssd.com**
**Via Email: jkroop@ssd.com**

Barbara C. Klabacha
Jaburg Wilk
3200 N. Central Ave.
Suite 2000
Phoenix, AZ 85012
**Via Email: bck@jaburgwilk.com**

David L. Knapper
Law Offices of David L. Knapper
1599 E Orangewood Avenue, #125
Phoenix, AZ 85020-5159
**Via Email: david.knapper@azbar.org**

German Yusufov
Pima County Attorney's Office
32 N Stone Avenue
Tucson, AZ 85701
**Via Email: pcaocvbk@pcao.pima.gov**

By  */s/ Cynthia L. Worne*
    Engelman Berger, P.C.

{02471.002/00143164.DOC /}

5